UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MATTHEW TOMCZAK, | 1:19-cv-19524-NLH-JS |
| Plaintiff, | OPINION |
| v. | |
| STRIPES, LLC, et al., | |
| Defendants. | |

**APPEARANCES:**

MATTHEW BENJAMIN WEISBERG
WEISBERG LAW
7 SOUTH MORTON AVENUE
MORTON, PA 19070

GARY SCHAFKOPF
HOPKINS & SCHAFKOPF, LLC
11 BALA AVENUE
BALA CYNWYD, PA 19004

    *On behalf of Plaintiff*

JASON ALEXANDER CABRERA
COZEN O'CONNOR
1650 MARKET STREET
SUITE 2800
PHILADELPHIA, PA 19103

    *On behalf of Defendants*

**HILLMAN**, **District Judge**

    Plaintiff brings this action under Section 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), to recover insurance benefits allegedly owed to him.  Presently before this Court is

1

Defendants Stripes LLC and Sunoco LP's (collectively "Defendants") Motion for Summary Judgment.  (ECF No. 23.)  For the reasons expressed below, Defendants' Motion will be granted.

## BACKGROUND

Plaintiff's employment with Defendant Stripes LLC began on or about December 11, 2013.  (Statement of Undisputed Material Facts "SUMF" ¶18.)  At the time of hire, Plaintiff acknowledged that he received a copy of the Sunoco LP handbook, that he read it thoroughly, and that he agreed to abide by its policies.  (SUMF ¶20.)  Plaintiff acknowledged that his employment was at-will.  (SUMF ¶21.)  Plaintiff also executed an Arbitration Agreement in which he agreed that "all claims relating to your application or candidacy for employment, your employment or the termination of your employment from the Company shall be submitted to binding and final arbitration." (SUMF ¶22.)  At the inception of his employment, Plaintiff elected not to accept longer term disability coverage.  (SUMF ¶19.)  Once Plaintiff completed the manager in training program, he was promoted to store manager and at that time he received long term disability coverage through The Hartford via AFTA Sunoco Store Management & Managers In Training program. (SUMF ¶24.)  Plaintiff subsequently reaffirmed his agreement to mediate and arbitrate employment-related disputes with the company when he executed a "Resolve Program and Mutual Arbitration Agreement" (the "Mediation and Arbitration Agreement").  (SUMF ¶25.)  The

2

Mediation and Arbitration Agreement required Plaintiff to submit to mediation and binding arbitration for all claims or controversies arising out of or relating to his employment, including claims under ERISA "except for claims for employee benefits under any group health plan sponsored by" the company. (SUMF ¶26.)

Following an incident in March 2018, Plaintiff was issued a written discipline, and informed that it was his final warning, and that "further infractions will result in termination of employment." (SUMF ¶¶27-35.) Following a second incident in August 2018, Plaintiff's supervisor reviewed Plaintiff's disciplinary history, which included the final written warning issued to Plaintiff on March 13, 2018, and determined that "[p]er our progressive discipline process, this warrants immediate dismissal." (SUMF ¶¶36-41.) As such, on September 10, 2018, Plaintiff's supervisor made the decision to terminate Plaintiff's employment, effective immediately, and signed Plaintiff's discipline and termination on September 10, 2018 at 5:24 pm. (SUMF ¶42.) Plaintiff points out that there is no evidence in the record that Plaintiff received the Employee Discipline Notice nor any evidence that Plaintiff received the letter in the record dated September 20, 2018, which notified Plaintiff of his termination effective September 10, 2018 "as a result of the incident on August 29 and your previous violation of policy and procedure." (SUMF ¶44; ECF No. 25-2 at ¶¶42-43.)

Plaintiff's last full day of work was on September 13, 2018. (ECF No. 25-3 at ¶8.) Plaintiff also contends he performed payroll services for his employer on September 17, 2018. (ECF No 25-3 at ¶11.)

On September 25, 2018, Plaintiff was sent a COBRA continuation rights form; however, Plaintiff did not elect COBRA continuation coverage. (SUMF ¶¶45-47.) Following his termination, Plaintiff advised claims representatives from The Hartford, in its capacity as claims administrator for long term disability benefits claims, that he fell on the morning of September 14, 2018 and was hospitalized. (SUMF ¶48.) Plaintiff also advised that: (i) his last full day at work was September 13, 2018; (ii) he fell on the morning of September 14, 2018 while getting ready for work; and, (iii) Plaintiff performed payroll services for his employer on September 17, 2020. (ECF No. 25-2 at ¶48.) On September 20, 2018, while in the hospital, Plaintiff advised claims administrators from The Hartford that he had suffered a stroke. (SUMF ¶50.) Between October 10, 2018 and March 13, 2019, Tomczak received $14,131.64 in New Jersey state statutory short term disability benefits from Sunoco via The Hartford's claims administration process. (SUMF ¶52.)

During The Hartford's review process, it was noted that the "employer first advised they terminated him effective 09/10/18 and now is stating he resigned 09/13/18" and Plaintiff denied that he resigned. (ECF No. 25-3 at ¶¶13-14.) The Hartford

4

determined that Plaintiff's date of disability was September 14, 2018.  (ECF No. 25-3 at ¶20.)  The Hartford denied Plaintiff's claim for long term disability benefits on October 10, 2018.  (SUMF ¶53.)  On November 30, 2018, Plaintiff spoke to a long term disability analyst with The Hartford who explained that his claim was denied because the documentation received from his employment was prior to the date of disability.  (ECF No. 25-2. at ¶57.)  Despite the denial on October 10, 2018, Plaintiff remained in communication with The Hartford through April 3, 2019.  (ECF No. 25-3 at ¶22.)  Between October 10, 2018 and April 3, 2019, Plaintiff was in contact with The Hartford concerning his denied benefits on fourteen occasions.  (ECF No. 25-3 at ¶22.)  In October 2019, Plaintiff commenced the instant action.  He asserts a single claim for denial of insurance benefits in violation of Section 502(a)(1)(B).  (SUMF ¶59.) Discovery in this matter was limited by agreement of the parties and by judicial order to the administrative record only.  (SUMF ¶6.)

### DISCUSSION

**A. Subject Matter Jurisdiction**

This Court exercises jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132(f).

**B. Legal Standard**

Summary judgment is appropriate where the Court is satisfied that "'the pleadings, depositions, answers to

5

interrogatories, and admissions on file, together with the affidavits if any,' . . . demonstrate the absence of a genuine issue of material fact" and that the moving party is entitled to a judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986) (citing FED. R. CIV. P. 56).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (citing Anderson, 477 U.S. at 255).

Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323 ("[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence

6

of a genuine issue of material fact."); see Singletary v. Pa. Dep't of Corr., 266 F.3d 186, 192 n.2 (3d Cir. 2001) ("Although the initial burden is on the summary judgment movant to show the absence of a genuine issue of material fact, 'the burden on the moving party may be discharged by "showing"—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case' when the nonmoving party bears the ultimate burden of proof." (citing Celotex, 477 U.S. at 325)).

Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Celotex, 477 U.S. at 324. A "party opposing summary judgment 'may not rest upon the mere allegations or denials of the . . . pleading[s].'" Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001). For "the non-moving party[] to prevail, [that party] must 'make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Cooper v. Sniezek, 418 F. App'x 56, 58 (3d Cir. 2011) (citing Celotex, 477 U.S. at 322). Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Anderson, 477 U.S. at 257.

7

**C. Analysis**

Defendants argue summary judgment is warranted because the Defendants did not make the ultimate determination to deny Plaintiff's claim for disability benefits and instead simply supplied the information regarding when Plaintiff's employment ended and that this was all it was required to do and the extent of input they had.  Defendants further explain that "The Hartford, in its capacity as Claims Administrator for Plaintiff's disability benefits, had the responsibility of considering his claim and properly denied it on the basis that the Plaintiff was not in an eligible employee group (i.e., because he had been terminated prior to the onset of his disability.)"  (ECF No. 23-2 at 10-11.).  Defendants then point out the fact that plaintiff failed to name The Hartford as a party to the suit.[1]  (Id. at 11.)  In response, Plaintiff contends that "the termination of Plaintiff was committed retro-actively [and] it is clear that Plaintiff is entitled to benefits, which the plan administrator improperly denied."  (ECF No. 25-1 at 7.)  Plaintiff further explains that Defendants

---

[1] This Court's analysis does not focus on the denial of Plaintiff's medical benefits, for which AmeriBen was the Claims Administrator.  This is because Plaintiff "admitted" the following fact: "On October 30, 2019, Tomczak filed the instant lawsuit, alleging a single count under Section 502(a)(1)(B) of ERISA for denial of insurance benefits."  (ECF No. 25-2 at 59.)  Accordingly, this Opinion is narrowed to the denial of Plaintiff's long-term disability benefits, for which The Hartford is the Administrator.

actually reported two separate end dates for Plaintiff's employment to The Hartford. First it was reported Plaintiff was terminated effective September 10, 2018. Second it was reported that Plaintiff resigned with an effective date of September 13, 2018. (ECF No. 25-1 at 7-8.) Plaintiff further contends that "the record demonstrates that while Moving Defendants made the decision to terminate Plaintiff, Tomczak on September 10, 2018, Plaintiff, Tomczak was not notified of the termination until at least September 20, 2018 - six days after Plaintiff, Tomczak's date of disability as determined by the Administrator." (ECF No. 25-1 at 8.) Plaintiff concludes that "the Administrator possessed sufficient information to determine that Plaintiff, Tomczak was an employee on Friday, September 14, 2018 as the Administrator, in his or her own words stated, 'there is video evidence and work evidence he worked 09/13/18 and 09/17/18.' As such, the Administrator's denial, based on a termination date of September 10, 2018, is 'unsupported by substantial evidence' and must be overturned." (ECF No. 25-1 at 10.) In response, Defendants reiterate that the extent of their involvement in The Hartford's review process was providing the information regarding the end of Plaintiff's employment. Defendants explain that The Hartford ultimately made the decision to deny Plaintiff's claims and that given the extent of their involvement they are not a proper defendant and instead the proper defendant is The Hartford. (ECF No. 26 at 2-4.)

Defendants further explain that Plaintiff's focus on the failure to notify plaintiff of his termination lies in an employment action against the Defendants, which would be subject to mandatory arbitration, and not in the current benefits claim before this Court.  (ECF No. 26 at 3-4.)  Although this Court does not condone Defendants' actions of providing two inconsistent employment end dates and reasons to The Hartford, this Court finds such a fact immaterial as both dates provided still occurred prior to the date of disability, September 14, 2018.  This Court concludes that summary judgment is warranted here because Defendants are not proper defendants in this action.  For this reason, this Opinion will not address Defendants' alternative argument in support of their Motion for Summary Judgment.

ERISA empowers a "participant [in] or beneficiary [of]" an employee benefit plan to bring an action to "recover benefits due to him under the terms of his [or her] plan . . . ."  29 U.S.C. § 1132(a)(1)(B).  To assert a claim for denial of benefits under Section 1132(a)(1)(B), a plaintiff must allege that "he or she . . . ha[s] a right to benefits that is legally enforceable against the plan,' and that the plan administrator improperly denied those benefits." Fleisher v. Standard Ins. Co., 679 F.3d 116, 120 (3d Cir. 2012) (quoting Hooven v. Exxon Mobil Corp., 465 F.3d 566, 574 (3d Cir. 2006).

The proper defendant in action brought under Section 1132(a)(1)(B) is either "the plan itself (or plan administrators in their official capacities only)." Graden v. Conexant Systems, 496 F.3d 291, 301 (3d. Cir. 2007) (citing Chapman v. ChoiceCare Long Island Term Disability Plan, 288 F.3d 506, 509-10 (2d Cir. 2002)). "Thus, if entitlement to benefits is established, the court can direct the plan administrator to pay them from the assets of the plan, much as a trustee may be compelled to satisfy a trust obligation from trust assets." Hahnemann Univ. Hosp. v. All Shore, Inc., 514 F.3d 300, 308 (3d Cir. 2008).

The Third Circuit has explained that "exercising control over the administration of benefits is the defining feature of the proper defendant under 29 U.S.C. § 1132(a)(1)(B)." Evans v. Employee Benefit Plan, 311 F. App'x 556, 558 (3d Cir. 2009). "Examples of control over the administration of benefits include having the discretion to interpret the terms of the policy and to determine eligibility." Gadsby v. United of Omaha Life Ins. Co., No. 18-2214, 2019 WL 1405845, at *4 (E.D. Pa. Mar. 28, 2019)(citing Newcomer v. Henkels & McCoy, Inc., No. 16-2119, 2017 WL 3268155, at *3 (M.D. Pa. Aug. 1, 2017); Prof'l Orthopedic Assocs., Pa., Cohen v. Horizon Blue Cross Blue Shield of New Jersey, No. 14-4731, 2015 WL 5455820, at *5 (D.N.J. Sept. 16, 2015)). Consequently, if a plan's written instrument "specifically delegate[s] . . . the discretion to determine

11

eligibility for benefits" to a third party, as was the case in Evans, the employer sponsoring that plan would not be a proper defendant.  Id. at 558-59.  "In contrast, if an employer authorizes a third party to process claims or determine eligibility but nonetheless retains the ultimate power to decide, at its discretion, disputed claims, that employer would be a proper defendant."  Woerner v. FRAM Grp. Operations, LLC, No. 12-6648, 2017 WL 1735683, at *2 (D.N.J. April 27, 2017) (citing Terry v. Bayer Corp., 145 F.3d 28, 35 (1st Cir. 1998); Harris Trust & Sav. Bank v. Provident Life & Accident Ins. Co., 57 F.3d 608, 613-14 (7th Cir.1995); Kyle Rys., Inc. v. Pac. Admin. Servs., Inc., 990 F.2d 513, 516 (9th Cir.1993); Baker v. Big Star Div. of The Grand Union Co., 893 F.2d 288, 289-90 (11th Cir. 1989); Me. Coast Mem'l Hosp. v. Sargent, 369 F. Supp. 2d 61, 64 (D. Me. 2005)).

     Here, it is undisputed the Administrator of Plaintiff's long term disability claim was The Hartford and Defendants only involvement with the denial of Plaintiff's claim was providing The Hartford with information regarding when Plaintiff's employment ended.  Following Plaintiff's termination, Plaintiff advised claims representatives from The Hartford, in its capacity as claims administrator for long term disability benefits claims, that he fell on the morning of September 14, 2018 and was hospitalized.  In addition, Plaintiff notified The Hartford that: (i) his last full day at work was September 13,

2018; (ii) he fell on the morning of September 14, 2018 while getting ready for work; and, (iii) Plaintiff performed payroll services for his employer on September 17, 2020.  Later, on September 20, 2018, while in the hospital, Plaintiff advised claims administrators from The Hartford that he had suffered a stroke.  It is further undisputed The Hartford denied Plaintiff's claim for long term disability benefits.

    Here, as detailed by both parties, The Hartford had the discretion to administer Plaintiff's benefits and ultimately decided to deny Plaintiff's claim.  The only actions Plaintiff directs this Court to is Defendant's notification to The Hartford regarding the end of Plaintiff's employment.  This action fails to demonstrate Defendants had control over the determination of whether Plaintiff was owed disability benefits.  In fact, Plaintiff argues "the Administrator [The Hartford] possessed sufficient information to determine that Plaintiff, Tomczak was an employee on Friday, September 14, 2018 . . . the Administrator's denial, based on a termination date of September 10, 2018, is 'unsupported by substantial evidence' and must be overturned."  This argument establishes that even Plaintiff understands The Hartford and not the Defendants had the ultimate power to decide disputed claims, which is fatal to his ERISA claim.  <u>Lash v. Reliance Std. Life Ins. Co.</u>, No. 16-235, 2017 WL 1232177 (E.D. Pa. April 4, 2017)("[B]ecause the First Amended Complaint alleges that Reliance made the final decision to deny

13

Lash's claim for long-term disability benefits, it does not plausibly allege that Matrix exercised the requisite control over the administration of benefits to support a claim against Matrix pursuant to § 1132(a)(1)(B)."). Plaintiff's argument supports the idea that The Hartford and not the Defendants "authority or responsibility for administering benefits under the Plan." Evans, 311 F. App'x at 558. As the Defendants note, and this Court agrees, to the extent Plaintiff believes The Hartford acted improperly and abused its discretion, his grievances lie with The Hartford and not Defendants. Accordingly, this Court will grant Defendants' Motion for Summary Judgment.

## CONCLUSION

For the reasons stated above, the Court will grant Defendants' Motion for Summary Judgment. An appropriate Order will be entered.

Date: February 12, 2021      s/ Noel L. Hillman  
At Camden, New Jersey     NOEL L. HILLMAN, U.S.D.J.